583 S.E.2d 800

**STATE of West Virginia ex rel. David APPLEBY Petitioner,**

v.

**Honorable Arthur M. RECHT, Judge of the Circuit Court of Ohio County, Respondent.**

No. 30737.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 4, 2002.

Dissenting Opinion of Justice Albright Dec. 11, 2002.

Martin P. Sheehan, Laura Spadaro, Sheehan & Nugent, P.L.L.C., Wheeling, for the Petitioner.

William J. Ihlenfeld, Assistant Prosecuting Attorney, Wheeling, for the Respondent.

PER CURIAM.

David Appleby, (hereinafter "Mr. Appleby"), petitioner and defendant below, invokes this Court's original jurisdiction in prohibition and seeks a writ prohibiting the State from proceeding to try him as a recidivist upon his conviction for driving under the influence (hereinafter "DUI"), third offense, based upon one predicate felony of unlawful assault and two prior felony convictions of DUI, third offense. After having reviewed Mr. Appleby's petition and memorandum of law, the State's memorandum in opposition, reviewing the pertinent authorities and hearing the arguments of counsel, we deny the writ.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On September 10, 2001, an Ohio County Grand Jury returned a two-count indictment against Mr. Appleby charging him with DUI, third offense, in violation of West Virginia Code §§ 17C-5-2(d) and (k) (Repl.Vol.2000), and driving while on a revoked license, third offense, for DUI in violation of West Virginia Code § 17B-4-3(b) (Repl.Vol.2000). The DUI, third offense, count included a list of seven prior convictions,[1] while the charge of third offense driving on a revoked license for DUI included a list of three such prior convictions.

On October 31, 2001, Mr. Appleby admitted that he had prior DUI convictions, one on

---

1. The DUI, third offense count of the indictment appears to list Mr. Appleby's June 14, 1988, conviction twice. We afford Mr. Appleby the benefit of the doubt and assume that the indictment lists seven, rather than eight, prior DUI convictions.

June 14, 1988, and one on September 8, 1998, such that any conviction under the DUI, third offense count, would be felonious. Mr. Appleby asserts that he made this admission for the purpose of excluding from jury consideration evidence of his prior convictions, pursuant to *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999). Trial of the driving while revoked, third offense count was severed.

On November 21, 2001, the day scheduled for trial on the DUI, third offense count, Mr. Appleby pled guilty to both counts of the indictment. He was represented by counsel at this time—as he had been since at least October 31, 2001. The Prosecuting Attorney stated to the trial court that the State and Mr. Appleby had no plea agreement and that Mr. Appleby's plea was "just a straight plea to the indictment." [2] At the plea hearing, the trial court advised Mr. Appleby that the maximum term of imprisonment for each of the offenses to which he pled guilty was one to three years, and that since the sentences could be imposed consecutively, the maximum sentence he could receive was incarceration for a term of two to six years. The trial court did not indicate that the State could initiate a recidivist proceeding. The trial court accepted the plea but, notwithstanding Mr. Appleby's waiver of the report, deferred sentencing until a presentence report could be completed.

Thereafter, the State filed information alleging that Mr. Appleby was a recidivist in that he had three prior convictions for DUI, third offense, one unlawful assault conviction and one felony conviction for driving on a revoked license for DUI, third offense. If sentenced as a recidivist, Mr. Appleby was subject to a life sentence with the opportunity for parole.

Mr. Appleby apparently filed a motion to dismiss the recidivist information in the circuit court. After securing new counsel, (different from the one who represented him at the November 21, 2001, plea), Mr. Appleby alleged additional grounds to dismiss the recidivist information. The trial court denied all relief. Mr. Appleby then sought an original jurisdiction prohibition from this Court.

## II.

### GROUNDS FOR ISSUING THE WRIT

A writ of prohibition lies "as a matter of right in all cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W. Va.Code § 53-1-1 (2000 Repl.Vol.). Mr. Appleby does not dispute that the circuit court enjoyed jurisdiction over his case. He contends that the circuit court committed a flagrant error by not prohibiting the State from proceeding on a recidivist trial. Both he and the State agree that the law governing prohibition in this instance is set forth in syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an often repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general

---

2. The State asserts in its memorandum in opposition that "when counsel for the Petitioner orally asked counsel for the State to consider a plea agreement, the State responded that it would not entertain a plea agreement as the State wanted to proceed with a recidivist proceeding if the State prevailed at trial." Further, the trial court implied in its order denying Mr. Appleby's motion to dismiss the recidivist information that discovery was apparently provided to Mr. Appleby containing evidence of his numerous prior convictions. This ruling comports with the State's memorandum in opposition filed in this Court that says the State provided Mr. Appleby "extensive discovery" including a copy of his criminal history and documentary evidence of his prior felony convictions.

guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

We conclude that the trial court did not commit clear legal error in this case. Consequently, we deny the writ.

## III.

## DISCUSSION

Mr. Appleby sets forth a number of assignments of error. Mr. Appleby argues that the circuit court erred in not dismissing the recidivist proceeding because when he plead guilty, the circuit court informed him he would only be facing a possible maximum sentence of two to six years—not the possibility of a life sentence as a recidivist; that the prosecuting attorney's failure to advise Mr. Appleby at the point he plead guilty that the State would seek a recidivist enhancement violated West Virginia Code § 61–11–19 (Repl.Vol.2000); that the United States' Supreme Court opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), renders West Virginia's recidivist sentencing procedure invalid; that West Virginia's recidivist Act is void for vagueness; that sentencing him to a life term of imprisonment as a recidivist for third-offense DUI would constitute disproportionate sentencing; and that we should overrule a number of this Court's opinions to provide to him the relief he seeks. We reject Mr. Appleby's contentions.

**A. The Trial Court and State Complied with West Virginia Code § 61–11–18 and West Virginia Rule of Criminal Procedure 11. Additionally, none of Mr. Appleby's Constitutional Rights Were Violated by the Trial Court's Actions.**

On the morning trial was to commence, November 21, 2001, Mr. Appleby informed the trial court that he wished to plead guilty to both counts of the indictment. As the trial court noted, there was no written plea "because there's simply no time for that, which is all right." The trial court accepted the guilty pleas. Mr. Appleby's trial counsel advised the court that Mr. Appleby waived a presentence report and that "actually, it's been his intention for sometime just to move on and get his sentence." The Prosecuting Attorney opposed sentencing. The trial court indicated his appreciation for Mr. Appleby's position, but the trial court delayed sentencing to await a presentence report because there were issues of consecutive or concurrent sentencing. Thereafter, on November 24, the State filed the recidivist information.[3]

■ Mr. Appleby argues that the State's delay of three days in filing the information violated the requirements of W. Va Code § 61–11–19. He also complains that the trial court misinformed him that the maximum sentence that could be imposed was a total of two to six years, while it was actually a life sentence as a recidivist.

Mr. Appleby specifically contends that the State's delay in filing the recidivist information from November 21 to November 24 was impermissible because it was not immediate notice in open court as required by W. Va. Code § 61–11–19.

■ We said in syllabus point 1 of *State v. Cain*, 178 W.Va. 353, 359 S.E.2d 581 (1987) (emphasis added):

A person convicted of a felony may not be sentenced pursuant to *W. Va.Code*, 61–11–18, –19 [1943], unless a recidivist information and any or all material amendments thereto as to the person's prior conviction or convictions are filed by the prosecuting attorney with the court *before*

---

**3.** While Mr. Appleby claims the information was not filed until November 24, the information, a copy of which is attached to the State's memorandum in opposition, is stamped with a circuit clerk's filing stamp dated November 21, 2001 and dated by the Prosecuting Attorney as November 21, 2001. Mr. Appleby also claims that No-

vember 21, 2001, was a Friday. It was actually a Wednesday. The State, however, does not address these discrepancies between Mr. Appleby's allegations and the dates on the information. Therefore, we do not pursue the issue of the discrepancies.

*expiration of the term at which such person was convicted,* so that such person is confronted with the facts charged in the entire information, including any or all material amendments thereto. *W. Va. Code,* 61–11–19 [1943].

More recently, we said in Syllabus point 2 of *State v. Cavallaro,* 210 W.Va. 237, 557 S.E.2d 291 (2001) (per curiam) (emphasis added):

"A person convicted of a felony cannot be sentenced under the habitual criminal statute, [W. Va.] Code § 61–11–19 [ (2000) ], *unless there is filed by the prosecuting attorney with the court at the same term, and before sentencing,* an information as to the prior conviction or convictions and for the purpose of identification the defendant is confronted with the facts charged in the information and cautioned as required by the statute." Syllabus point 3, *State ex rel. Housden v. Adams,* 143 W.Va. 601, 103 S.E.2d 873 (1958).

Thus, we believe the immediacy requirement is satisfied if the State files the information before sentencing and prior to the end of the term of court within which the defendant was convicted. To hold otherwise would risk a defendant being able to avoid imposition of a recidivist sentence if the State is unaware at the time of conviction of any predicate offenses. Such an inadvisable result would emasculate "[t]he primary purpose of our recidivist statutes, W. Va.Code, 61–11–18 (1943), and W. Va.Code, 61–11–19 (1943), [which] is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses[,]" Syl. pt. 3, in part, *State v. Jones,* 187 W.Va. 600, 420 S.E.2d 736 (1992) and "to protect society from habitual criminals...." *State v. Stout,* 116 W.Va. 398, 402, 180 S.E.

443, 444 (1935).[4] As we said in Syllabus point 1 of *State ex rel. Holbert v. Robinson,* 134 W.Va. 524, 531, 59 S.E.2d 884, 889 (1950):

A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts.

In this case, the recidivist information was filed before sentencing and prior to the end of the term of court within which Mr. Appleby was convicted. Therefore, he has no legal basis upon which to complain.

This does not end our inquiry. Mr. Appleby also posits that the trial court's failure to advise him that he faced a life sentence under the recidivist act violates West Virginia Rule of Criminal Procedure 11(c)(1). Rule 11(c)(1) requires, among other things, that

[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, ... [t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]

Mr. Appleby contends that the trial court's information was erroneous and that the recidivist proceeding should be prohibited by this Court. We believe Mr. Appleby's application of Rule 11(c)(1) is flawed.

"Guilty pleas are governed by Rule 11 of the West Virginia Rules of Criminal Procedure, which is patterned after Rule 11 of the

---

4. While Mr. Appleby cites us *Griffin v. Warden,* 517 F.2d 756 (4th Cir.1975), we note that the Fourth Circuit's interpretation of a West Virginia statute is not binding on us, *Cf. Jones v. Painter,* 140 F.Supp.2d 677, 679 (N.D.W.Va.) (Footnote omitted) ("A state court's interpretation of state recidivist laws is considered to be binding on a federal court reviewing the conviction on habeas corpus."), *appeal dismissed,* 20 Fed. Appx. 187 (4th Cir.2001), and that *Griffin* did not analyze,

as must this Court, any unjust and absurd results when interpreting West Virginia Code § 61–11–19. *See, e.g., Charter Communications. v. Community Antenna Service, Inc.,* 211 W.Va. 71, 77, 561 S.E.2d 793, 799 (2002) (citations omitted) ("It is the 'duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.' ")

Federal Rules of Criminal Procedure." *State v. Bennett,* 179 W.Va. 464, 467, 370 S.E.2d 120, 123 (1988). In applying our Rule 11, we have looked to the advisory committee's note to federal Rule 11. *State v. Evans,* 203 W.Va. 446, 449, 508 S.E.2d 606, 609 (1998). *See also State ex rel. Starr v. Halbritter,* 183 W.Va. 350, 352 n. 4, 395 S.E.2d 773, 775 n. 4 (1990) (citing advisory committee's note to Federal Rule of Criminal Procedure 7(a)); *State v. Bongalis,* 180 W.Va. 584, 589 n. 6, 378 S.E.2d 449, 454 n. 6 (1989) (citing advisory committee's note to Federal Rule of Criminal Procedure 12(b)(2)); *State v. Watson,* 173 W.Va. 553, 558, 318 S.E.2d 603, 608 (1984) (citing advisory committee's note to Federal Rule of Criminal Procedure 26.2).

▆▆ The advisory committee note to the 1974 amendment to Federal Rule of Criminal Procedure 11 provides, in pertinent part:

It has been suggested that it is desirable to inform a defendant of additional consequences which might follow from his plea of guilty. . . . The ABA Standards Relating to Pleas of Guilty § 1.4(c)(iii) (Approved Draft, 1968) recommend that the defendant be informed that he may be subject to additional punishment if the offense charged is one for which a different or additional punishment is authorized by reason of the defendant's previous conviction.

*Under the rule the judge is not required to inform a defendant about these matters,* though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant.

(Emphasis added). Thus, Rule 11 does not require a trial court to advise a defendant concerning a possible recidivist enhancement [5] and the trial court in this case committed no error in not so informing Mr. Appleby.

▆▆ We find further support in the recognition of the Fourth Circuit that:

The law is clear that a valid plea of guilty requires that the defendant be made aware of all "the direct consequences of his plea." By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all "possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea of guilty, . . . ."

*Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364, 1365–66 (4th Cir.1973) (citations omitted). "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* at 1366.

▆▆ Under West Virginia Code §§ 61–11–18 & 19, the imposition of a life sentence is not "definite, immediate and largely automatic." The State not only retains the discretion to decide when to pursue recidivist sentencing (or to decide not to so proceed), but the separate nature of the recidivist proceeding requires the State to satisfy a number of requirements, such as: (1) filing a written information, Syl. pt. 1, *State ex rel. Cox v. Boles,* 146 W.Va. 392, 120 S.E.2d 707 (1961); (2) proving "beyond a reasonable doubt that each penitentiary offense, including the principal penitentiary offense, was committed subsequent to each preceding conviction and sentence[,]" Syl., *State v. McMannis,* 161 W.Va. 437, 242 S.E.2d 571 (1978); and (3) proving beyond a reasonable doubt to the jury the identity of the defendant. W. Va.Code § 61–11–19; Syl. pt. 4, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980). As then State Supreme Court Justice (and now United States Supreme Court Associate Justice) Souter explained in *State v. Elliott,* 133 N.H. 190, 574 A.2d 1378, 1380 (N.H.1990) (citation omitted):

The possible significance of a guilty verdict for purposes of the habitual offender act is a classic example of a conviction's

---

5. While we acknowledge contrary authority, this authority does not discuss the advisory committee's note. *See, e.g., Government of the Canal Zone v. Tobar T.,* 565 F.2d 1321 (5th Cir.1978) (per curiam).

consequences that is collateral in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it. Thus, we have consistently held that a sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law[.]

The procedure used in the case below was consistent with our statutes and, thus, consistent with constitutional mandate. *See Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (affirming the constitutionality of West Virginia's recidivist statutes). In the case *sub judice:*

> Petitioner was fully advised of the nature of the charge; he was represented by counsel; the plea was entered freely and voluntarily, and the alleged lack of knowledge of a permissible increased penalty because petitioner was a recidivist is not sufficient to void the plea.

*United States ex rel. Toland v. Phimister*, 296 F.Supp. 1027, 1029 (S.D.N.Y.1969).[6]

 In short, "neither the constitution nor [Rule 11] requires that a criminal defendant be advised of the possibility of habitual criminal proceedings prior to the entry of a plea of guilty." *State v. Barton*,

93 Wash.2d 301, 305, 609 P.2d 1353, 1356 (1980) (en banc), *questioned by State v. McDermond*, 112 Wash.App. 239, 47 P.3d 600 (2002).[7] Thus, we deny the prohibition.[8]

### B. West Virginia Code § § 61–11–18 and 19 Are Constitutional.

Anticipating that we might rule against him, Mr. Appleby also challenges West Virginia's recidivist statutes on a number of other grounds. West Virginia Code § 61–11–18 (2000 Repl.Vol.) sets forth the sentencing requirements for recidivists, and § 61–11–19 (2000 Repl.Vol.) sets forth the procedure to impose a recidivist sentence.

The Petitioner cites *Apprendi v. New Jersey*, 530 U.S. 466, 469, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claiming that the facts of the prior convictions under our recidivist statute must be plead in the charging *indictment* and proven to a jury beyond a reasonable doubt. We reject both of these contentions.

 **1. There is No Constitutional Requirement that a Recidivist Enhancement be Charged in the Indictment for the Triggering Offense.** In West Virginia, recidivist proceedings are commenced by a separate information. *See* W. Va.Code § 61–11–19. The Petitioner contends that *Apprendi* requires the *original indictment* include notifi-

---

**6.** We also note that the State says that it specifically informed Mr. Appleby's trial counsel that, if he was convicted, the State would seek a recidivist sentence, and that discovery was apparently provided to Mr. Appleby that included a list of Mr. Appleby's prior convictions. We additionally note that at a bond hearing on October 31, 2001, the Prosecuting Attorney told the trial judge, in the presence of Mr. Appleby and counsel, "I do not believe that two to six is the maximum sentence he may be facing. And in fact, this Court has often indicated that DUI three is an act of violence, and I contend that there's a possibility of a much steeper sentence...." Oct. 31 Bond Tr. at 25.

**7.** To hold otherwise may result in unacceptable consequences—a defendant could plead guilty to a possible triggering felony (well aware, of course, of his own criminal record), while the State is ignorant of the predicate felonies which could implicate West Virginia Code § 61–11–18. The defendant could then seek to void the plea based on lack of notice of the habitual criminal proceedings. "The purpose of the habitual crim-

inal statute is to deter a person from future criminal behavior[,]" *State v. Pratt*, 161 W.Va. 530, 546, 244 S.E.2d 227, 236 (1978) (citations omitted), and "to protect society from habitual criminals ...." *State v. Stout*, 116 W.Va. 398, 402, 180 S.E. 443, 444 (1935). "[T]o hold other than we do would frustrate th[ese] purpose[s]." *Pratt*, 161 W.Va. at 546, 244 S.E.2d at 236.

While we do not mandate this procedure, we think that from a practical standpoint the better course of action for a trial court is to advise a defendant about the possibility of recidivist proceedings being instituted in every case where West Virginia Code § 61–11–18 might apply. *See Toland*, 296 F.Supp. at 1029 ("While such a course is desirable as a matter of procedure and to safeguard against claims such as here presented, the failure to give the state's statutory warning does not by itself violate petitioner's federal right to due process of law.")

**8.** Our decision does not prevent Mr. Appleby from filing a petition for a writ of habeas corpus—assuming grounds for such a petition may otherwise exist.

cation of the State's intent to seek a recidivist enhancement.

At issue in *Apprendi* was the constitutional permissibility of a New Jersey statute empowering a trial judge to enhance a sentence if the judge found by a preponderance of the evidence that the motivation for the crime was "to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." In finding the statute unconstitutional, the Court held that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455 (emphasis added). This ruling was consistent with the Supreme Court's earlier opinion in *Almendarez–Torres v. United States,* 523 U.S. 224, 247, 118 S.Ct. 1219, 1233, 140 L.Ed.2d 350, 371 (1998), where the Court held recidivism may be treated as a sentencing factor rather than an essential element of the underlying offense.

*Apprendi* expressly refused to revisit *Almendarez–Torres. Apprendi* 530 U.S. at 489-90, 120 S.Ct. at 2362, 147 L.Ed.2d at 454-55. While *Apprendi* noted tension with *Almendarez–Torres,* it refused to overrule that case thus carving out a narrow exception regarding recidivism. *Apprendi* 530 U.S. at 490, 120 S.Ct at 2362, 147 L.Ed.2d at 455. Thus, consistent with *Almendarez–Torres,* 523 U.S. at 243, 118 S.Ct. at 1231, 140 L.Ed.2d at 368,

> a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was "necessary to bring the case within the statute." *Graham v. West Virginia,* 224 U.S. 616, 624, 32 S.Ct. 583, 585-86, 56 L.Ed. 917 (1912).

■ **2. There is No Federal Constitutional Requirement of Proof Beyond a Reasonable Doubt to a Jury of the Fact of Predicate Convictions.** Mr. Appleby also appears to contend that consistent with his view (a view we have rejected, *see supra* Part III.B.1) that not only must the recidivist charge be included in the original indictment

charging the triggering offense, the fact of the predicate felonies must be proven to the jury beyond a reasonable doubt. However, *Apprendi* has not overruled *Almendarez–Torres* and we "apply Supreme Court precedent as it stands, and that precedent does not require that either the existence or substance of [the defendant's] earlier convictions be submitted to a jury and proven beyond a reasonable doubt." *United States v. Peltier,* 276 F.3d 1003, 1006 (8th Cir.), *cert. denied,* 537 U.S. 862, 123 S.Ct. 246, 154 L.Ed.2d 103 (2002).

Indeed, *Apprendi* itself recognized a compelling rationale for treating prior convictions differently from elements of a present offense. The prior convictions have already been proven to a jury beyond a reasonable doubt (or such requirements have been waived by the defendant). *See Apprendi,* 530 U.S. at 496, 120 S.Ct. at 2366, 147 L.Ed.2d at 458-59 ("[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof."). The United States Supreme Court applied similar rationale in two cases postdating *Apprendi,* and concluded that, with the exception of denial of counsel claims, petitioners seeking post-conviction relief cannot challenge the validity of any predicate felonies. *See, e.g., Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 403-04, 121 S.Ct. 1567, 1574, 149 L.Ed.2d 608, 618 (2001) (citations omitted) ("[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under [28 U.S.C.] § 2254 on the ground that the prior conviction was unconstitutionally obtained."); *Daniels v. United States,* 532 U.S. 374, 382, 121 S.Ct.

1578, 1587, 149 L.Ed.2d 590, 600 (2001) (similar-prior enhancement convictions may not be contested under federal motion to vacate sentence, 28 U.S.C. § 2255).

▮ The United States Supreme Court has said that states may not impose greater protections as a matter of *federal* constitutional law when the Supreme Court has specifically refrained from imposing them, but may do so as a matter of *state* law. *See Arkansas v. Sullivan,* 532 U.S. 769, 772, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994, 999 (2001) (per curiam) (citing *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575–76 (1975)). The Supreme Court has spoken as a matter of federal constitutional law and concluded that there is no requirement that the existence of predicate convictions be submitted to a jury and proved beyond a reasonable doubt. We cannot, as a matter of federal constitutional law, adopt such a rule.

We further recognize, however, that Mr. Appleby does have a significant number of procedural rights as a matter of *state* law in a recidivist proceeding. *See Wanstreet v. Bordenkircher,* 166 W.Va. 523, 527, 276 S.E.2d 205, 209 (1981) (noting the "strict procedural standards" applicable to a recidivist proceeding). For example, under state law, a recidivist defendant has the right to require the State to prove to a jury beyond a reasonable doubt the fact of prior conviction, as well as the identity of the defendant as the person convicted of the predicate felonies and that the prior convictions occurred one after the other. *Id.* at 526–27, 276 S.E.2d at 208. Thus, we deny the writ.

## C. Application of West Virginia's Recidivist Statute to a Repeated Drunk Driver Is Not Constitutionally Disproportionate.

▮ Mr. Appleby contends that imposition of a recidivist life sentence would vio-

late the proportionality principles of the state and federal constitutions.[9] We first express some hesitation to delve into this issue. Mr. Appleby has not yet been tried as a recidivist, much less sentenced as one. However, because the possibility exists that Mr. Appleby may receive a recidivist sentence, we address his claims. *See, e.g., State ex rel. McGraw v. Willis,* 174 W.Va. 118, 119, 323 S.E.2d 600, 600 (1984) ("[B]ecause it is foreseeable that the question ... may surface again, the case is ripe for adjudication.") Mr. Appleby first asks us to reconsider our unanimous conclusion in Syllabus point 3, in part, of *State v. Williams,* 196 W.Va. 639, 474 S.E.2d 569 (1996), that "[d]espite the fact that a third offense DUI felony conviction pursuant to West Virginia Code § 17C–5–2(j) (Supp.1995) results from an enhanced misdemeanor, the Legislature intended that this type of felony conviction be used for sentence enhancement in connection with the terms of the recidivist statute, West Virginia Code § 61–11–18 (Supp.1995)." He asserts both statutory and constitutional grounds, arguing that we misunderstood legislative intent and that *Williams* violates the proportionality guarantee of the state and federal constitutions. We do not agree with Mr. Appleby's premises.

▮ We first refuse to revisit a case of such recent vintage as *Williams* on the ground we have misunderstood statutory intent—especially given that the legislature has not amended West Virginia Code § 61–11–18 since we decided *Williams.* "If the doctrine of stare decisis is to play any judicial role, ..., we cannot overrule a decision so recently rendered without any evidence of changing conditions or serious judicial error in interpretation." *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 1029, 207 S.E.2d 169, 173 (1974).[10]

---

9. Article 3, section 5 of the West Virginia Constitution provides, in pertinent part, "[p]enalties shall be proportioned to the character and degree of the offence." The Eighth Amendment to the United States Constitution contains no explicit textual proportionality guarantee, but the Supreme Court has read a proportionality guarantee into the Amendment. *See United States v. Premises Known as RR No. 1,* 14 F.3d 864, 874–75 (3d Cir.1994) (footnote omitted) (recognizing that in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct.

3001, 77 L.Ed.2d 637 (1983), "[t]he Supreme Court held that the Cruel and Unusual Punishment Clause of the Eighth Amendment implicitly required criminal punishments to be at least loosely proportionate to the crime of conviction.")

10. We reject Mr. Appleby's invitation to overrule our recently decided opinion in *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996), arguing that *Sears* improperly decided that the

■ Mr. Appleby also posits a constitutional argument not raised in *Williams* that driving under the influence is not a serious crime so that imposition of a life sentence would violate the proportionality guarantees of the federal and state constitutions. He cites *Solem v. Helm,* 463 U.S. 277, 296–97, 103 S.Ct. 3001, 3013, 77 L.Ed.2d 637, 653 (1983), for the proposition that crimes such as burglary and DUI, third offense, are "relatively minor." [11] We strongly disagree with the *Solem* majority. We join in the recognition of the *Solem* dissenters that "[a]t the very least, respondent's burglaries and his third-offense drunk driving posed real risk of serious harm to others. It is sheer fortuity that the places respondent burglarized were unoccupied and that he killed no pedestrians while behind the wheel." *Id.* at 315–16, 103 S.Ct. at 3023, 77 L.Ed.2d at 665 (Burger, C.J., Rehnquist, O'Connor & White, JJ., dissenting).[12] The Supreme Court itself has recognized in the years since *Solem* that, "the offense of driving while intoxicated is increasingly regarded in many jurisdictions as a very serious matter." *Berkemer v. McCarty,* 468 U.S. 420, 432, 104 S.Ct. 3138, 3146, 82 L.Ed.2d 317, 330 (1984) (footnote omitted).[13] In *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 451, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412, 420–21 (1990) (footnote omitted) the Court observed:

> No one can seriously dispute the magnitude of the drunken driving problem or the States interest in eradicating it. Media reports of alcohol—related death and mutilation on the Nation's roads are legion. The anecdotal is confirmed by the statistical. "Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage." 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.8(d), p. 71 (2d ed.1987). For decades, this Court has "repeatedly lamented the tragedy." *South Dakota v. Neville,* 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983); *see Breithaupt v. Abram,* 352 U.S. 432, 439, 77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957) ("The increasing slaughter on our highways ... now reaches the astounding figures only heard of on the battlefield").

The statistics recited in *Sitz* mirror those in West Virginia. In 2001, 131 people lost their lives in alcohol related traffic incidents in West Virginia and annual alcohol related crash costs in West Virginia—including medical care, work loss, public service (emergency personnel), property damage and legal

---

use of enhanced misdemeanors is not inherently violative of double jeopardy. The United States Supreme Court has, "[h]istorically, ... found double jeopardy protections inapplicable to sentencing proceedings, because the determinations at issue do not place a defendant in jeopardy for an 'offense[.]' " *Monge v. California,* 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615, 623 (1998) (citations omitted). We think this issue requires no further discussion.

11. To the extent that the Eighth Amendment may contain a proportionality guarantee as articulated by *Solem, contra Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836, 847 (1991) ("We conclude from this examination that *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee.") (Scalia, J. & Rehnquist C.J.), the Court of Appeals for the Fourth Circuit has recognized that *Solem* requires a proportionality analysis only in cases involving life without the chance for parole sentences. *See Beverati v. Smith,* 120 F.3d 500, 504–05 (4th Cir.1997) ("[W]e conclude that Inmates' argument must fail on the basis of our repeated holdings that outside the context of a capital sentence a proportionality review is

necessary only with respect to sentences of life imprisonment without the possibility of parole.") If convicted as a recidivist, Mr. Appleby would be eligible for parole after serving fifteen years. *See* W. Va.Code § 61–12–13(c)(2000 Repl.Vol.) ("[N]o person sentenced for life who has been previously twice convicted of a felony may be paroled until he or she has served fifteen years....") We address *Solem,* therefore, only as persuasive authority under article 3, section 5 of the West Virginia Constitution rather than as binding authority under the Eighth Amendment.

12. *Accord State v. Evans,* 203 W.Va. 446, 450, 508 S.E.2d 606, 610 (1998) ("We expressly reject Evans' contention that burglary does not constitute a crime of violence. *See Martin v. Leverette,* 161 W.Va. 547, 555, 244 S.E.2d 39, 43–44 (1978) (stating that burglary is a 'serious [crime] and involve[s] the threat of violence against persons'))."

13. In fact, "[d]runk driving is a serious offense in every jurisdiction." 1 Richard E. Erwin, *Defense of Drunk Driving Cases* § 8.2 at 8–3 (3d ed.2002).

costs, and pain, suffering and lost quality of life costs—totaled $1,000,000,000. Mothers Against Drunk Driving: *Rating the States 2002*, available at *www. madd.org/docs/rts2002/rts section3.pdf.*

 Our view accords with the dissenters in *Solem,* the jurisdictions noted in *Berkemer,* and the majority in *Sitz.* "The dangers inherent in driving on the public streets while under the influence of an intoxicant are obvious." *State v. Luke,* 995 S.W.2d 630, 638 (Tenn.Ct.Crim.App.1998). In short, "operating an automobile while under the influence is reckless conduct that places the citizens of this State at great risk of serious physical harm or death." *State ex rel. State v. Gustke,* 205 W.Va. 72, 81, 516 S.E.2d 283, 292 (1999).[14] Mr. Appleby's record includes an astounding *four* third-offense driving under the influence felony convictions (and a grand total of *eight* acts of driving under the influence),[15] and one unlawful assault conviction. We have little trouble in finding that driving under the influence is a crime of violence supporting imposition of a recidivist sentence. "A conviction for driving under the influence is a serious conviction warranting

consideration in the calculation of a defendant's criminal history category." *United States v. Julian,* 112 F.3d 511 (4th Cir.1997) (per curiam) (unpublished) (text available in Westlaw).

Mr. Appleby cites us federal statutory immigration law that excludes driving under the influence convictions from the definition of crimes of violence. He also asserts that crimes with an intent component are more culpable than crimes of recklessness and punishment should be measured accordingly. We take exception to both of these contentions.

We reject the application of federal immigration law. To the extent that any federal law should guide us, we think a more appropriate measurement for a crime of violence is that contained in the United States Sentencing Guidelines. United States Sentencing Guideline § 4B1.2, application note 1, provides "Other offenses are included as 'crimes of violence' if (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted ... by its nature, presented a serious potential risk of physical injury to another." Consistent with our rea-

---

14. Our opinion in *Guske* was neither novel nor neoteric. *See City of Waukesha v. Gorz,* 166 Wis.2d 243, 248 & n. 1, 479 N.W.2d 221, 224 & n. 1 (Ct.App.1991) ("A number of cases from other states support our conclusion that driving while intoxicated is a dangerous and violent

act....") (citing *State v. Jennings,* 112 Ohio App. 455, 176 N.E.2d 304 (1959); *City of Troy v. Cummins,* 107 Ohio App. 318, 159 N.E.2d 239 (1958); *Romo v. State,* 577 S.W.2d 251 (Texas Crim.App.1979); *McEathron v. State,* 163 Tex. Crim. 619, 294 S.W.2d 822 (1956)).

15. Mr. Appleby's indictment in the underlying proceeding recites the following convictions:

| Date of Conviction | Offense | Jurisdiction |
| --- | --- | --- |
| June 14, 1988 | Driving under the Influence | Magistrate Court of Ohio County |
| December 2, 1992 | Driving under the Influence | County Court of Belmont County, Ohio |
| May 4, 1993 | Driving under the Influence, Third Offense | Circuit Court of Ohio County |
| May 9, 1995 | Driving under the Influence | County Court of Belmont County, Ohio |
| August 10, 1995 | Driving under the Influence, Third Offense | Circuit Court of Ohio County |
| May 27, 1997 | Driving under the Influence | Magistrate Court of Ohio County |
| September 8, 1998 | Driving under the Influence, Third Offense | Circuit Court of Ohio County |

soning in *Gustke,* the federal courts have recognized that, "the very nature of the crime of DWI [Driving While Intoxicated] presents a 'serious risk of physical injury' to others, and makes DWI a crime of violence." *United States v. DeSantiago-Gonzalez,* 207 F.3d 261, 264 (5th Cir.2000) (citation omitted). Furthermore, a "reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.'" *Tison v. Arizona,* 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127, 144 (1987).[16] Thus, we do not find Mr. Appleby's arguments persuasive.

 West Virginia Code § 61–11–18 is designed to deter those who are incapable of conforming their conduct to legitimately enacted obligations protecting society. *See, e.g.,* Syl pt. 3, *State v. Jones,* 187 W.Va. 600, 420 S.E.2d 736 (1992); *State v. Pratt,* 161 W.Va. at 546, 244 S.E.2d at 236; *State v. Stout,* 116 W.Va. at 402, 180 S.E. at 444. "States have a valid interest in deterring and segregating habitual criminals[,]" *Parke v. Raley,* 506 U.S. 20, 27, 113 S.Ct. 517, 522, 121 L.Ed.2d 391, 402 (1992), and a compelling interest in ensuring the safety of the public roadways. *Mackey v. Montrym,* 443 U.S. 1, 17 & 18, 99 S.Ct. 2612, 2620 & 2621, 61 L.Ed.2d 321, 334 & 335 (1979) (recognizing the "paramount interest the Commonwealth has in preserving the safety of its public highways" and the states "compelling interest in highway safety[.]"). *See also State v. Tanner,* 15 Ohio St.3d 1, 5, 472 N.E.2d 689, 693 (1984) (citing *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983)) ("We find that there is a substantial state interest in reducing the carnage wrought by drunk drivers.")

By our reading of the recidivist information filed in this case, Mr. Appleby has been convicted of DUI, third offense, four times since 1993 (including the conviction now at issue before this Court). Moreover, the transcript of Mr. Appleby's guilty plea contains an uncontested statement from the Prosecuting Attorney that on the evening Mr. Appleby was arrested for the driving under the influence count that forms the basis of this proceeding, he admitted to the arresting officer that he had consumed *thirty beers.*[17] We are in general agreement with the Idaho Court of Appeals that:

> Driving under the influence of intoxicants is a serious offense. Although it is not a violent crime, driving while intoxicated inherently creates a grave risk of injury to persons and property and raises very significant concerns for public safety. The human suffering inflicted by those who drive while intoxicated is no less severe, and perhaps more pervasive, than that caused by intentional acts of violence. Hence the nature of the DUI offense tends to support a substantial sentence.

*State v. Croston,* 124 Idaho 471, 472–73, 860 P.2d 674, 675–76 (Ct.App.1993).[18]

The possible imposition of a life sentence for Mr. Appleby's egregious, socially reprehensible, apparently incorrigible and indisputably dangerous conduct violates no proportionality principle. Indeed, Mr. Appleby tells us in his memorandum of law that in at least eight states a life sentence may be possible, and two states may impose sen-

---

**16.** Mr. Appleby's numerous prior convictions (in the jurisdiction of two states) further exacerbate his culpability. *Cf. People v. McCarnes,* 179 Cal. App.3d 525, 532, 224 Cal.Rptr. 846, 849–50 (1986) (citation omitted) (affirming two second degree murder convictions resulting from driving under the influence):

> Defendant also contends that his previous convictions for driving under the influence were not probative on the knowledge element of implied malice, because the convictions showed only that he knew such driving was *unlawful,* but not that he knew it was *dangerous.* However, the reason that driving under the influence is unlawful is *because* it is dangerous, and to ignore that basic proposition, particularly in the context of an offense for

> which the punishment for repeat offenders is more severe ..., is to make a mockery of the legal system as well as the deaths of thousands each year who are innocent victims of drunken drivers.

**17.** At oral argument before this Court, Mr. Appleby's counsel claimed Mr. Appleby admitted to imbibing only twenty-five beers.

**18.** We believe our characterization of driving under the influence as a violent crime and *Croston's* characterization of it as "not a violent crime" but "inherently creat[ing] a grave risk of injury to persons" is a semantic distinction at best.

518

tences of 99 and 100 years for habitual drunk drivers, respectively. And states have imposed life sentences for just such offenses. *See, e.g., Strickland v. State,* 784 So.2d 957 (Miss.2001) (en banc) (plurality opinion) (defendant sentenced to a life without parole term as a recidivist for a DUI, third offense, predicated only on possession of a firearm by a felon and aggravated assault); *Bell v. State,* 814 S.W.2d 229 (Tex.Ct.App.1991) (Bell convicted of DUI, third offense, and charged as a recidivist—jury assessed a life sentence, but the sentence vacated because of the state's inability to prove the validity of two of the predicate felonies). Application of the recidivist statute to Mr. Appleby does not violate his rights.

### D. Mr. Appleby Cannot Prevail on a Void for Vagueness Challenge to West Virginia Code § 61–11–18.

Mr. Appleby contends that West Virginia Code § 61–11–18(c) (2000 Repl.Vol.) is facially void for vagueness. He cites several of our cases reversing and affirming recidivist sentences on proportionality grounds and contends that this demonstrates that West Virginia Code § 61–11–18 is void for vagueness. We think that Mr. Appleby erroneously conflates the due process guarantee underlying the void for vagueness doctrine and the guarantee against disproportionate sentencing. We hold that under either approach he cannot prevail.

 The void for vagueness doctrine is an aspect of the due process requirement that statutes set forth impermissible conduct with sufficient clarity that a person of ordinary intelligence knows what conduct is prohibited and the penalty if he transgresses these limitations.

" 'Elementary notions of fairness enshrined in our constitutional jurisprudence

dictate that a person receive fair notice not only of the conduct that will subject him to punishment[,] but also of the severity of the penalty that a State may impose.' " *State v. Miller,* 197 W.Va. 588, 599, 476 S.E.2d 535, 546 (1996) (quoting *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809, 826 (1996) (footnote omitted)).

*State v. Easton,* 203 W.Va. 631, 640, 510 S.E.2d 465, 474 (1998).

 In a facial challenge to the vagueness of a law,

assuming the enactment implicates no constitutionally protected conduct, [the court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 [, 368–69] (1982) (footnote omitted).

Thus, the Court has recognized that a party has standing to challenge a statute facially if "no standard of conduct is specified at all," *Parker [v. Levy],* 417 U.S. [733,] 757, 94 S.Ct. [2547,] 2562, [41 L.Ed.2d 439, 458 (1974),] that is, if the statute "is impermissibly vague in all of its applications." *Hoffman Estates,* 455 U.S. at 497 [102 S.Ct. at 1193, 71 L.Ed.2d at 371]; *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

*United States v. Westbrook,* 817 F.2d 529, 532 (9th Cir.1987).[19]

**19.** There is "no substantive constitutional right to drive an automobile[,]" *Jones v. Penny,* 387 F.Supp. 383, 392 (M.D.N.C.1974) (three-judge panel), much less a constitutional right to drive an automobile while under the influence of alcohol. *State v. Tanner,* 15 Ohio St.3d 1, 5 472 N.E.2d 689, 693 (1984) ("[T]here is no fundamental constitutional right to drive while drunk....") *See also Williams v. State,* 50 P.3d 1116, 1120 & n. 12 (Nev.2002) ("Other courts have similarly held that neither driving nor using

illicit drugs constitute fundamental rights.") (citing *State v. Phillips,* 178 Ariz. 368, 873 P.2d 706, 709 & n. 5 (Ct.App.1994); *Shepler v. State,* 758 N.E.2d 966, 969 (Ind.Ct.App.2001); *People v. Gassman,* 251 Ill.App.3d 681, 190 Ill.Dec. 815, 622 N.E.2d 845, 853 (1993)); *State v. Locke,* 418 A.2d 843, 850 (R.I.1980) ("There is ... no fundamental constitutional right to drive on the highways....."); *Smith v. Cox,* 609 P.2d 1332, 1333 (Utah 1980) (noting that an individual "does not have a constitutional right to drive an automobile

West Virginia Code § 61–11–18(c) provides, "[w]hen it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." We have previously recognized that West Virginia Code § 61–11–18 is "plain and unambiguous...." *State ex rel. Chadwell v. Duncil,* 196 W.Va. 643, 647, 474 S.E.2d 573, 577 (1996) (per curiam). If a defendant is twice convicted of a penitentiary offense he falls within the ambit of West Virginia Code § 61–11–18.

▮▮▮▮ Conviction of DUI, third offense, is "a felony" that carries with it a possible sentence of "imprison[ment] in a state correctional facility for not less than one nor more than three years...." W. Va.Code § 17C–5–2(k) (2000 Repl.Vol.) Because Mr. Appleby has three prior convictions for the felony crimes of DUI, third offense, and one conviction for the felony of unlawful wounding, he clearly falls within the parameters of West Virginia Code § 61–11–18(c) and lacks standing to raise a facial challenge to the statute. *See Haig v. Agee,* 453 U.S. 280, 309 n. 61, 101 S.Ct. 2766, 2783 n. 61, 69 L.Ed.2d 640, 663 n. 61 (1981) (citing *Parker v. Levy,* 417 U.S. 733, 755–756, 94 S.Ct. 2547, 2561–2562, 41 L.Ed.2d 439, 458 (1974)) ("The District Court held that since Agee's conduct falls within the core of the regulation, Agee lacks standing to contend that the regulation is vague and overbroad. Tr. 11–12 (Jan. 3, 1980). We agree."); *Fisher v. Coleman,* 639 F.2d 191, 191–91 (4th Cir.1981) (per curiam) ("[F]isher lacked standing to challenge the interdiction provisions of [the habitual drunkard statute,] Va.Code § 4–51 on vagueness ... grounds because, viewed both from his perspective or that of enforcing officials, his undisputed conduct (*inter alia,* fifty-nine con-

victions for public drunkenness over a period of slightly more than two years prior to his interdiction) fell clearly within the challenged language[.]")

▮▮▮▮ Moreover, it appears that Mr. Appleby's is invoking the due process clause in a round about way to address his real complaint which is with our *proportionality* jurisprudence. Mr. Appleby challenges our recidivist statute claiming that in some instances this Court has affirmed recidivist sentences for some defendants, but has reversed the recidivist sentences for others, even though these defendants were convicted of the same offenses or had the same predicate felonies. Even assuming the accuracy of Mr. Appleby's assertion [20] that West Virginia's

> sentencing scheme might indeed permit another defendant guilty of the same crime to receive a lesser sentence .... that is no reason for altering [his] punishment or declaring the law unconstitutional. Judicial discretion naturally leads to discrepancies in sentencing, as [he] complains. But even wide sentencing discretion in the abstract is not a violation of due process or equal protection. [T]he issue is the appropriateness of the sentence given the defendant's crime: "Discretion, even if it ends in grossly unequal treatment according to culpability, does not entitle a guilty defendant to avoid a sentence appropriate to his own crime."

*Holman v. Page,* 95 F.3d 481, 486 (7th Cir. 1996) (citation omitted).

▮▮▮▮ Having already disposed of Mr. Appleby's proportionality claims, *see supra* Part 3.C, we need not readdress them here. *See Portuondo v. Agard,* 529 U.S. 61, 74, 120 S.Ct. 1119, 1127, 146 L.Ed.2d 47, 59 (2000) ("Of course to the extent this [14th Amendment due process] claim is based upon al-

---

upon the public highways. (Particularly so, when he has been drinking alcoholic beverages.)"); *State v. Demeritt,* 149 Me. 380, 383, 103 A.2d 106, 108 (1953) ("There is no inherent or constitutional right to drive a dangerous automobile on the highway...."); *State v. Chirpich,* 392 N.W.2d 34, 37 (Minn.Ct.App.1986) ("Appellant cites no authority for the proposition that driving under the influence is constitutionally protected conduct. No court has ever so held.").

**20.** Mr. Appleby's argument is further undermined in that his chief complaint is not that we have inconsistently treated convictions for *DUI, third offense,* as triggering and predicate offenses, but we have allegedly treated *breaking and entering convictions* (crimes that no one has alleged Mr. Appleby has committed) inconsistently.

leged burdening of Fifth and Sixth Amendment rights, it has already been disposed of by our determination that those Amendments were not infringed.") [21]

## IV.

## CONCLUSION

The Petition for a Writ of Prohibition is denied.

Writ denied.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

ALBRIGHT, Justice, dissenting.

(Filed Dec. 11, 2002)

I respectfully dissent from the majority position because I firmly believe that a writ of prohibition should have been granted in this case. In my view, two issues of constitutional proportion deserved full exploration which cannot be found in the majority opinion. The first of these is the interplay of *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), on the fundamental fairness we have always required in recidivist proceedings. The second is the decision in *State v. Williams*, 196 W.Va. 639, 474 S.E.2d 569 (1996), permitting the use in recidivist proceedings of offenses which are felonies solely by reason of status elements such as we addressed in *State v. Nichols*.

### I. The Interplay of *State v. Nichols,* Fundamental Fairness and Recidivist Proceedings

*Nichols* allows a defendant charged with an offense which is enhanced by prior convictions of like offenses to elect to admit before trial the prior convictions, called "status elements" of the enhanced offense, in order to avoid the possibility that a jury will be swayed to convict a defendant of the charged offense because of the prior convictions.

In the case before us, the petitioner was charged with third offense driving under the influence (hereinafter "DUI") and third offense driving on a license suspended for DUI. Taking advantage of *Nichols,* the petitioner admitted the prior convictions at a hearing held by the circuit court before trial. On the day set for trial of the charged offense, the petitioner pled guilty to the charged felony offenses as well, thus subjecting himself to two sentences enhanced by his prior convictions. Subsequent to the petitioner's guilty plea, the State filed an information against the petitioner, seeking to further enhance his sentence under West Virginia Code §§ 61-11-18 and 19 (also referred to hereinafter as "recidivist statute"). Under the information, the petitioner would be liable to imprisonment for life unless sooner paroled.

The majority found that the information filed under the recidivist statute constituted timely notice to the petitioner of the State's intent to seek a life term of imprisonment and did not offend Rule 11 of the Rules of Criminal Procedure regarding the punishment information required to be given to a defendant before accepting his or her guilty plea.

However, the majority failed to seriously examine the issue of adequate notice in light of our 1999 decision in *Nichols* and our holdings in other recidivist cases that a judge about to hear a recidivist information is required to "duly caution" a defendant regarding the penalties to which any admissions may expose a defendant. W.Va.Code § 61-11-19 (1943) (Repl.Vol.2000).

---

**21.** Mr. Appleby raises two other grounds in his petition. He asks us to find that W. Va.Code § 61-11-18(c) is a violation of equal protection—even though he recognizes that this claim has previously been rejected by both the United States Supreme Court and by this Court. *See, e.g., Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 452 (1962), Syl. pt. 3, *Martin v. Leverette*, 161 W.Va. 547, 244 S.E.2d 39 (1978). Mr. Appleby also asserts that his prior conviction for unlawful assault should not count as a predicate felony since his guilty plea to

unlawful assault imposed only a jail sentence rather than the penitentiary sentence that was statutorily available. He recognizes, however, that we rejected this same argument in the sole syllabus of *State ex rel. Johnson v. Skeen*, 140 W.Va. 896, 87 S.E.2d 521 (1955). "Mere disagreement as to how a case was decided is not a sufficient reason to deviate from a judicial policy promoting certainty, stability and uniformity in the law." *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 1029, 207 S.E.2d 169, 173 (1974). We find Mr. Appleby's claims to be meritless.

The petitioner argued that the State's delay in filing the recidivist information did not meet the immediacy requirement set forth in West Virginia Code § 61–11–19.[1] In finding that the statutory prescription for filing the information was satisfied, the majority said that "[t]o hold otherwise would risk a defendant being able to avoid imposition of a recidivist sentence if the State is unaware at the time of conviction of any predicate offenses." *State ex rel. Appleby v. Recht,* 213 W.Va. 503, 583 S.E.2d 800, 807 (2002). Of course, given the fact that the enhancing crimes set forth in the information to garner a life sentence in this case are, with one exception, *exactly the same offenses* relied upon in the indictment to raise the charged offenses to a felony, and all such charges were in this case known fully to the prosecutor when the underlying indictment was returned, the reason stated by the majority is mere piffle.

There is no justifiable reason why a prosecutor, having drawn an indictment stating certain prior convictions relied upon to raise the charged offenses to a felony should be permitted to stand silent on the State's intent to seek even further enhancement by way of a recidivist information, when a defendant is about to completely "cook his own goose" by making admissions under *Nichols* or in a Rule 11 guilty plea hearing that virtually guarantee punishment enhanced twice. Certainly, the trial court's statement to the petitioner regarding possible punishment incident to his Rule 11 hearing prior to pleading guilty was totally inaccurate in light of the prosecutor's later pursuit of a recidivist information.

Perhaps more to the point is that this State has long recognized that a defendant is entitled, as a matter of fundamental fairness, to be "duly cautioned" before making admissions that may enhance a sentence by reason of recidivism.[2] In its rush to uphold the result below in this case, the majority did not consider the due process implications of the *Nichols* procedure upon a subsequent and then unannounced intent to seek a life sentence under the recidivist statute. *See* Syl. Pt. 7, *Ex parte Watson,* 82 W.Va. 201, 95 S.E. 648 (1918) (when interpreting a statute the presumption is that the Legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective). Pursuant to West Virginia Code § 61–11–19, the subject of a recidivist information must be "duly cautioned" by the trial court before that person acknowledges in open court that he or she is the same person convicted of and sentenced for the offenses listed in the information. Although this Court has not adopted a rigid definition of the term "duly cautioned," we have recognized that, being jurisdictional, it is a mandatory statutory requirement placed on the trial court which serves to satisfy principles of fundamental fairness in a recidivist proceeding. *See State ex rel. Combs v. Boles,* 151 W.Va. 194, 201, 151 S.E.2d 115, 120 (1966) (the duly cautioned provision of the recidivist statute has been fulfilled when the requirements of fundamental fairness, affording the defendant due process, have been satisfied). The reasons for affording due process protections in a recidivist proceeding were summarized in *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980), in the following way:

> A recidivist proceeding is not simply a sentencing hearing, but a proceeding whereby a new criminal status, that of being an habitual criminal, is determined.... If an individual is successfully prosecuted as an habitual criminal, a greater penalty than that attaching to the underlying crime is imposed. For these reasons, courts have required substantial

---

1. West Virginia Code § 61–11–19 states, in pertinent part, that "[i]t shall be the duty of the prosecuting attorney when he has knowledge of [a person's] former sentence or sentences to the penitentiary ... to give information thereof to the court immediately upon conviction and before sentence."

2. The majority's concern for the prosecution lacking knowledge of a particular defendant's criminal history appears to be exaggerated inasmuch as criminal records have become accessible through various computerized sources. I have little doubt that the majority is aware of such technological advancements since the majority opinion, in what appears to be an effort to expand the horizons of legal research, cited as authority an Internet website address of a lobbying group.

due process protection in recidivist proceedings.

*Id.* at 225, 262 S.E.2d at 429 (citations omitted).

Given the heightened due process protections which are implicated by recidivist proceedings, it is obvious that unless those protections are extended to admissions given under *Nichols,* their subsequent employment in the actual recidivist proceeding will be mere sham justice, devoid of any meaning whatever. Fundamental fairness requires that the State inform the trial court of its intent to file a recidivist information before admissions are made in a *Nichols* hearing whenever the State intends to use in a recidivist proceeding any prior convictions which are status elements in the charged offense in order to preserve any semblance of the defendant's due process rights to be "duly cautioned." [3]

## II. It is Time to Reverse State v. Williams

The petitioner contended that this Court misapprehended legislative intent in deciding *State v. Williams,* in which it was held that a felony conviction resulting from one or more enhanced misdemeanor convictions could be used to form the basis for sentence enhancement under the terms of the recidivist statute. I am not convinced that this issue was ripe for decision at this juncture and should have been thus decided.[4] However, the majority chose instead to summarily conclude that reconsideration of *Williams* was not in order because the Legislature has not chosen to amend the recidivist statute since *Williams* was decided. My initial reaction to this declaration of presumptive knowledge of legislative intent is that it overlooks the fact that the decision in *Williams* was reached without reliance on any relevant statutory change, but nonetheless overturned a seven-

ty-year-old precedent established in *State v. Brown,* 91 W.Va. 187, 112 S.E. 408 (1922).

I am even more concerned that by providing such cursory consideration of the proportionality argument the majority failed to recognize that our decision in *Williams* has broader implications than convictions under the DUI statute. A number of offenses can be construed to fall within the *Williams* classification for purposes of imposing a recidivist sentence, many of which have no general association with violence or threats of violence. *See, e.g.,* W.Va.Code §§ 17A–8–4 (1999) (joyriding); 17B–4–3 (1999) (driving while license suspended or revoked for driving under the influence); 60–6–9(i) (1999)(offering alcohol to another in a public place; possessing alcohol in excess of 10 gallons without obtaining proper stamps or seals) 61–3A–3 (1994) (shoplifting); 61–11–20 (1923) (petit larceny). In my estimation, a proportionality argument in this context remains to be decided by this Court.

This Court has recognized that since the recidivist statutes are in derogation of the common law they "are generally held to require a strict construction in favor of the prisoner." *State ex rel. Ringer v. Boles,* 151 W.Va. 864, 871, 157 S.E.2d 554, 558 (1967). We relied on this proposition in *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), when we noted that this Court has historically adopted a rather strict and narrow construction of the recidivist statute. The discussion thereafter in *Wanstreet* related various instances wherein this narrow construction occurred with specific reference to our decision in *State v. Brown,* 91 W.Va. 187, 112 S.E. 408 (1922):

> In *Brown,* we explained that the felonies within the scope of the recidivist statute must be those that are felonies because of the "character of the offense," rather than

---

**3.** Contrary to the majority opinion discussion, I believe that we have to look no further than the West Virginia Constitution to locate the due process safeguards which are called into play in these proceedings. *See* W.Va. Const. art. III, § 10. Reliance on federal sources is misplaced in this instance because these sources have not taken into consideration the unique features of our statutory and case law or the extent of protection extended by our state constitution.

**4.** Instead of meaningfully addressing the proportionality issue, the majority proceeded to decide a matter upon which the lower court had not yet ruled, that is, whether DUI offenses are violent in nature so as to warrant the imposition of a recidivist life sentence. This improvident action was taken despite the majority's recognition that the petitioner had not yet been tried or sentenced as a recidivist by the court below.

those that are felonies because of the "character of the accused."

*Wanstreet* at 526, 276 S.E.2d at 208 (citation omitted.). Although our decision in *Williams* overruled *Brown* by placing felony convictions based on predicate misdemeanor offenses within the ambit of the recidivist statute, this statement with regard to the character of the offense subject to the provisions of the recidivist statute retains its vitality. The *Wanstreet* discussion concerning the narrow construction of the recidivist statute concluded by saying that "it is apparent that we have consistently viewed the West Virginia recidivist statute in a restrictive fashion in order to mitigate its harshness." *Wanstreet* at 528, 276 S.E.2d at 209. Trial courts are well-advised to continue to adhere to these principles as standards against which proportionality issues are decided in recidivist proceedings. As summarized in syllabus point five of *Wanstreet*, determination of "whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." 166 W.Va. at 523–24, 276 S.E.2d at 207.[5]

It seems to me far wiser to humbly admit the error in foresight and correct it, especially when constitutional rights are inadvertent-ly trampled upon. The principle of stare decisis is not intended to perpetuate such errors. As we related in *State v. Nichols,* " 'Remaining true to an "intrinsically sounder" doctrine ... better serves the values of stare decisis.... In such a situation "special justification" exists to depart from the recently decided case.' *Adarand Constr., Inc. v. Pena,* 515 U.S. 200, 231, 115 S.Ct. 2097, 2115, 132 L.Ed.2d 158 (1995)." *Nichols* at 445, 541 S.E.2d at 323 (1999).

For the foregoing reasons, I dissent from the majority opinion in this case. Regardless of whether this Court might choose to address its earlier decisions in *State v. Williams* and *State v. Brown,* I believe the petitioner is entitled to the writ prayed for in light of the interplay of *State v. Nichols* and the petitioner's entitlement to be "duly cautioned" under West Virginia Code § 61–11–19. Consequently, a writ of prohibition, moulded to address either or both issues raised in this dissent, should have been granted.

I am authorized to state that Justice STARCHER joins in this separate opinion.

---

**5.** It should also be noted that the majority opinion could be read (I hope it is not) to authorize an expanded discretion in prosecuting attorneys to select (without any judicial or other check) from the pool of people with past multiple-offense convictions, and to effectively impose mandatory life sentences on those people who are selected. Especially when combined with the notice and due process issues identified in Part I of this opinion, such as unfettered discretion, which purports to divest the judiciary of its constitutional role in the consideration of proportionality in sentencing, raises an additional source of constitutional concern.