[Cite as *State v. Whalen*, 2013-Ohio-1861.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120449 |
| | | TRIAL NO. 11TRC-40960 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| PAIRREN WHALEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 8, 2013

*John P. Curp*, City Solicitor, *Charles Rubenstein*, City Prosecutor, and *Melanie Reising*, Assistant City Prosecutor, for Plaintiff-Appellee,

*David H. Hoffman*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     This is a constitutional challenge to provisions of Ohio's impaired driving statute which makes it illegal to drive with marihuana metabolites in one's system. *See* R.C. 4511.19(A)(1)(j)(viii).   The defendant, who was convicted for a violation of the statute, argues primarily that the statute is unconstitutional because it criminalizes the presence of certain metabolites which, he claims, do not affect one's ability to drive.   We are not persuaded, and we affirm his conviction.

I.

{¶2}     Pairren Whalen was stopped by a police officer for making an improper left-hand turn.   When the officer approached Mr. Whalen's vehicle, he could smell burnt marihuana.   The officer noticed that Mr. Whalen was speaking with a "very distinct slur, kind of just real slow inebriated speech" and his eyes were very glassy and bloodshot.   The officer administered field sobriety tests.

{¶3}     Based upon the odor of marihuana and Mr. Whalen's poor performance on the field sobriety tests, the officer arrested Mr. Whalen.   Mr. Whalen admitted that he had been smoking marihuana and that there was a baggie with 100 grams of marihuana in the glove box of his vehicle.   He was transported to the police station where he submitted a urine sample.   Testing of the urine sample revealed a blood alcohol content of .023, and the presence of marihuana metabolite at a concentration greater than 500 nanograms.

{¶4}     Mr. Whalen was subsequently charged with violating R.C. 4511.19(A)(1)(a), operating a vehicle under the influence of alcohol and/or drugs of abuse, R.C. 4511.19(A)(1)(j), operating a vehicle with a prohibited concentration of a controlled substance, and Cincinnati Municipal Code 502-19, disregarding a traffic control device.

II.

{¶5}    Mr. Whalen filed a motion to suppress and a motion to dismiss, arguing that R.C. 4511.19(A)(1)(j)(viii) was unconstitutionally overbroad and vague.  Specifically, he argued that the statute unconstitutionally criminalized driving with a marihuana metabolite in one's system.    During the hearing on the motions, Robert Topmiller, a forensic toxicologist with the Hamilton County Coroner's office, testified on behalf of the state, and Harry Plotnick, who was identified as an attorney and a "consultant in forensic toxicology," testified for the defendant. The testimony of both experts was largely in agreement as to the science underlying the metabolite at issue. The body breaks down the active ingredient in marihuana, tetrahydrocannabinol ("THC") into several metabolites.  Most prominently, the THC is broken down first into a metabolite referred to as 11-hydroxy-THC, and then into 11-carboxy-THC, the metabolite found in Mr. Whalen's system. THC is a hallucinogen and has psychoactive properties.    11-hydroxy-THC also has some psychoactive properties but is much weaker than the THC.    11-carboxy-THC has no biological effect on the nervous system.   THC metabolizes at a much quicker rate than 11-carboxy-THC, and, therefore, leaves an individual's body more quickly than 11-carboxy-THC.  The coroner's lab only has the capacity to test urine for 11-carboxy-THC.

{¶6}    The trial court denied the motions to dismiss and to suppress.  Mr. Whalen pleaded no contest to operating a motor vehicle with at least 35 nanograms of marihuana metabolite in his urine, a violation of R.C. 4511.19(A)(1)(j)(viii)(II).   The trial court found him guilty, and sentenced him to 180 days in jail with 177 days suspended and three days in a driver-intervention program, a $400 fine and court costs, 18 months probation, and a six-months' driver's license suspension, but stayed his sentence pending this appeal.

{¶7}     Mr. Whalen asserts in this appeal that the statute is unconstitutional on its face and as applied to him, arguing that it is both void for vagueness and overbroad.  He additionally contends that the trial court violated his Sixth Amendment Right to Confrontation by denying him the opportunity to cross-examine the state's expert witness about whether the amount of marihuana metabolite in his system would have impaired his ability to operate a motor vehicle.

III.A.

{¶8}     Ohio has a three-part statutory scheme for impaired driving when the drug of abuse is marihuana.  R.C. 4511.19(A)(1)(j)(vii) deals with marihuana, itself, and criminalizes driving with certain concentrations of marihuana in one's urine or blood.  It is a per se offense in that the state need only show that the defendant operated a vehicle and the defendant's chemical test reading was at the proscribed level.  R.C. 4511.19(A)(1)(j)(viii)(I) and (II) deal with marihuana metabolites.  R.C. 4511.19(A)(1)(j)(viii)(II) is also a per se provision; it criminalizes driving with at least 35 nanograms of marihuana metabolite by urine or at least 50 nanograms of marihuana metabolite by blood.  R.C. 4511.19(A)(1)(j)(viii)(I) requires impairment *plus* a lower-level of metabolite presence: it criminalizes driving if a person is impaired and has at least 15 nanograms of marihuana metabolite by urine or at least five nanograms of marihuana metabolite by blood.

{¶9}     In his first assignment of error, Mr. Whalen argues that both R.C. 4511.19(A)(1)(j)(viii)(I) and (II) are void for vagueness and overbroad.  Mr. Whalen, however, lacks standing to challenge the constitutionality of R.C. 4511.19(A)(1)(j)(viii)(I) because he pleaded no contest to and was found guilty only of violating R.C. 4511.19(A)(1)(j)(viii)(II).  Accordingly, we confine our analysis to this subsection of the statute.

{¶10}     We first address Mr. Whalen's argument that the statute is void for vagueness.  The vagueness doctrine, which is premised on the Due Process Clause of the Fifth and Fourteenth Amendments, requires a statute to give fair notice of offending conduct. A criminal statute is void for vagueness if it fails to define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, or if it encourages arbitrary and discriminatory enforcement.  *State v. Tanner*, 15 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984), quoting *Kolendar v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).  Where, as here, a statute does not threaten fundamental constitutional rights, the constitution permits a greater degree of vagueness.  *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).   In such a case, a court should sustain a facial challenge only where the "enactment is impermissibly vague in all its applications." *Id.* at 495-96.  If the statute survives a facial challenge, a litigant may succeed on a vagueness claim only by demonstrating that the statute is impermissibly vague as applied to him or her.  *Id.*

{¶11}     Mr. Whalen argues that R.C. 4511.19(A)(1)(j)(viii)(II) is facially void for vagueness because it fails to provide an ordinary person with notice of the prohibited conduct.   There is nothing vague, unclear, or indefinite about the statute, however.   It proscribes driving with explicitly-defined levels of a marihuana metabolite.  A metabolite is commonly defined as a "substance produced by metabolism."  *American Heritage Dictionary* 1103 (4th Ed.2000).  A person of ordinary intelligence is certainly capable of understanding the meaning of a marihuana metabolite and that driving with the proscribed levels of such a metabolite in one's system is prohibited.

{¶12}     Mr. Whalen suggests, however, that the statute is vague because an ordinary person is not able to reasonably discern how long traces of marihuana, whether ingested legally or not, may remain in one's system.  Thus, he argues, a person who ingests

marihuana does not know when he can legally drive an automobile. Marihuana, however, is a controlled substance. It is unlawful to use or possess marihuana in any amount in Ohio. *See* R.C. 2925.11(C)(3)(a)-(g). Certainly, one who has consumed marihuana is on fair notice that metabolites may remain in his system.

{¶13} Nor are we persuaded by Mr. Whalen's argument that the statute lends itself to arbitrary and discriminatory enforcement. The Ohio Supreme Court rejected a similar argument in upholding Ohio's per se OVI statute. *Tanner*, 15 Ohio St.3d at 3-4, 472 N.E.2d 689. The court explained that by setting a maximum blood alcohol content level the statute left "no discretion in the physical application of the statute" and thereby "discouraged" "discriminatory and arbitrary enforcement." *Id.* at 4. Similarly, here the statutory scheme discourages arbitrary and discriminatory enforcement by setting precise metabolite levels at which driving is prohibited.

{¶14} Mr. Whalen also argues that the statute is fatally overbroad. The doctrine of overbreadth, however, relates only to First Amendment cases. *United States v. Williams*, 553 U.S. 285, 292-293, 128 S.Ct. 1830, 170 L.Ed.2d 260 (2008); *State v. Brooks*, 75 Ohio St.3d 148, 155, 661 N.E.2d 1030 (1996). Because Mr. Whalen has failed to identify any First Amendment right inhibited by the statute, his overbreadth challenge lacks merit.[1]

{¶15} Finally, to the extent that Mr. Whalen argues the statute is unconstitutional as applied to him, he has not identified any constitutionally protected right to operate his vehicle after consuming marihuana. Here, he was arrested with over 14 times the legal limit of marihuana metabolite in his system. Persons of ordinary intelligence

---

[1] We recognize that in *Tanner*, the Ohio Supreme Court considered an argument that the OVI per se statute was unconstitutionally overbroad because it restricted an individual's fundamental right to travel. *Tanner*, 15 Ohio St.3d at 5, 472 N.E.2d 689. In rejecting the argument, the *Tanner* court noted that driving is a privilege, not a right and that "there is no fundamental constitutional right to drive while drunk." *Id.* Similarly, here, there is no fundamental right to drive after using illegal drugs.

would not have to guess whether the statute applies to his conduct. Because he has not "presented any evidence of a presently existing set of facts which makes the statute void and unenforceable when applied to him," his "as applied" challenge fails as well. *State v. Dario*, 106 Ohio App.3d 232, 665 N.E.2d 759 (1st Dist.1995), citing *State v. Bilder*, 99 Ohio App.3d 653, 651 N.E.2d 502 (9th Dist.1994).

{¶16} Although, Mr. Whalen couches his arguments in terms of vagueness and overbreadth, his real quibble seems to be with the legislative decision to criminalize driving based upon the presence of a marihuana metabolite that may not itself cause impairment. Certainly, however, the presence of a marihuana metabolite in one's system indicates that one has used marihuana, an illegal drug in Ohio.[2] Furthermore, THC, the active ingredient in marihuana, leaves the body relatively quickly. Unlike the case with alcohol breathalyzer tests, which are commonly administered by police during roadside stops, it may take some time before police are able to transport and administer a blood or urine test to a suspected drugged driver. Accordingly, the legislative decision to include marihuana metabolites within the per se prohibition is not unreasonable.

{¶17} The Ohio Supreme Court has recognized that driving is a privilege, not a constitutional right, and that the state has a legitimate interest in highway safety and keeping impaired drivers off the road. *Tanner*, 15 Ohio St.3d at 3-4, 472 N.E.2d 689. The

---

[2] It is also worth noting that unlike some other states, Ohio does not prohibit driving with *any* amount of a marihuana metabolite in one's body but rather sets certain maximum limits that may not be exceeded. *Compare People v. Gassman*, 251 Ill.App.3d 681, 622 N.E.2d 845 (1993); *State v. Phillips*, 178 Ariz. 368, 873 P.2d 706 (1994). The General Assembly, in constructing the per se statute, expressly considered the arguments of those who claimed that the law lacked a direct correlation between the prohibited amount of marihuana and its metabolite in a driver's system and impairment. Senators Steve Austria and Patricia Clancy, two of the bill's sponsors, noted during deliberations on the bill that they had worked closely with forensic toxicologists to establish the precise levels at which driving is prohibited in the statute and that the levels in the bill were not only consistent with federal standards, but that the forensic toxicologists who had participated in setting those levels had unanimously agreed that anyone driving with the levels of the substance listed in the bill definitely would be impaired. *See* 2005 OH Sub.S.B. 8, Third Consideration, available at http://www.ohiochannel.org, Ohio Senate Session (February 16, 2005) 14:15:57 (accessed May 1, 2013).

General Assembly acted well within its police powers in criminalizing driving with a prohibited amount of marihuana or marihuana metabolite in a person's blood or urine.

### III.B.

{¶18}     Mr. Whalen also presents a second assignment of error in which he argues that the trial court erred in not allowing his attorney to cross-examine the state's expert witness, Mr. Topmiller, about whether the amount of marihuana metabolite in his system would have impaired his ability to operate a motor vehicle.  As explained above, however, R.C. 4511.19(A)(1)(j)(viii)(II) is a per se offense.  The only issue is whether the driver had a proscribed amount of a marihuana metabolite in his system.  Accordingly, the testimony Mr. Whalen's counsel sought to elicit was irrelevant, and the trial court acted well within its discretion in limiting cross-examination.  The second assignment of error is overruled.

### IV.

{¶19}     We affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J,** and **DINKELACKER, J.,** concur.

Please note:
   The court has recorded its own entry this date.

8